IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BRYANT ANTHONY BILLINGS,  *
ADC #093957                *
                           *
        Plaintiff,         *
v.                         *
                           *   No. 4:14CV00674-SWW
JOHNSON, Doctor,           *
Pulaski County Jail; *et al.*  *
                           *
        Defendants.        *

## ORDER

The Court has reviewed the Proposed Findings and Recommended Disposition submitted by United States Magistrate Judge Joe J. Volpe, plaintiff's objections, Separate Defendant Doctor Carl Johnson's response to plaintiff's objections, and plaintiff's reply to Johnson's response. After carefully considering all of these and making a *de novo* review of the record, the Court adopts the Proposed Findings and Recommended Disposition.

During a physical conducted by Canera Banister, a nurse at the Pulaski County Detention Center ("PCDC"), on April 2, 2014, plaintiff complained about pain in his left arm. He explained he had been in an altercation a few days earlier. Nurse Banister told plaintiff she was going to refer him to Dr. Johnson. Plaintiff says he did not see Dr. Johnson but on April 10, 2014, he was taken to UAMS and was seen by a doctor there. Plaintiff was sent back to the PCDC with the recommendation that he return for a follow-up visit. Because he was a convicted inmate sentenced to the Arkansas Department of Correction ("ADC"), the ADC had to approve any follow-up care and specialty consultation.[1] Even though he returned to the PCDC with a soft cast and sling on his

---

[1] Def's. Statement of Facts Not in Dispute [doc. # 122] at ¶ 20.

arm, plaintiff claims he had no idea that his arm might be broken.[2] He also said no one told him that he was to go back to UAMS for a follow-up visit. Supposedly, an appointment had been made for him to go back on April 15. According to plaintiff, no one at the PCDC made arrangements for him to go back to UAMS until he was in the process of being transferred to the ADC. Plaintiff claims that it was not until he was seen by medical people at ADC on May 6, 2014, that he learned that he was supposed to go back to UAMS for follow-up. He claims defendants were deliberately indifferent to his serious medical needs in failing to timely schedule the follow-up appointment.

Defendants moved to dismiss plaintiffs' claims, arguing he failed to exhaust his administrative remedies while at the PCDC. The Magistrate Judge found that even if plaintiff did not learn about the inadequacies in getting him to his follow-up appointment and, therefore, could not have filed a grievance, any claims regarding lack of adequate medical care prior to his treatment at UAMS should be dismissed because he did not file any grievances until after he was transferred to the ADC. Similarly, if plaintiff had been denied care such as pain medication after he was seen at UAMS and before he was transferred to the ADC, he could have filed grievances at the PCDC.

Plaintiff asserts the grievance procedure was unavailable to him because he is left-handed and could not write. He says defendants never explained to him how he could go about getting help filing a grievance and, even if he could have filed a grievance, he was not aware of defendants' unconstitutional conduct until after he got to the ADC. In response to plaintiff's objections, Dr. Johnson points to discrepancies in allegations plaintiff made in earlier versions of complaints filed in this case, indicating plaintiff knew about the diagnosis of his broken arm and the prescription for

---

[2]*See* Pl's. Obj. to Proposed Findings and Recommendations [doc. # 23] at 3; Third Am. Comp. [doc. # 28] at 5, ¶ 12.

a follow-up visit.[3]

The Court finds plaintiff's claims that defendants were deliberately indifferent to his serious medical needs must be dismissed without prejudice for failure to exhaust administrative remedies.[4] Plaintiff could have sought assistance in filing a grievance while he was confined at the PCDC. Although he argues he could not file a grievance because he could not use his dominant hand, the Court notes that plaintiff arranged for an inmate at the ADC to write out plaintiff's original and amended complaints for him. Obviously, plaintiff knew something was wrong with his left arm, otherwise the doctor at UAMS would not have placed it in a soft cast and sling. If he were in pain and defendants refused to provide him with adequate pain medication, plaintiff could have found a way to file a grievance. Further, as the Magistrate Judge determined, defendants were in the process and had obtained the required approval from the ADC for the follow-up appointment but no appointment had been set before plaintiff was transferred to the ADC. The Court agrees that defendants' failure to schedule a follow-up appointment does not rise to the level of deliberate indifference to a serious medical need.

IT IS, THEREFORE, ORDERED that:

---

[3]In response to plaintiff's objections, Dr. Johnson points out that in his Original Complaint, plaintiff alleges Johnson determined plaintiff's arm was broken after it was x-rayed at the PCDC and scheduled an appointment at UAMS, where the doctor determined they would try a soft cast for one week then see him and decide whether he needed a hard cast. Plaintiff alleged Johnson read the UAMS report upon plaintiff's return to PCDC, noted that plaintiff had an appointment the following week, and told plaintiff to be ready to go. Plaintiff alleged he said okay but after one week he noticed that he had not been seen by the doctor. Compl. [doc. # 2] at 6. Plaintiff explains that he did not draft the original complaint, the allegations were based on the drafter's interpretation of the documents plaintiff provided him, and plaintiff did not notice the drafter's misrepresentation of the facts. Further, plaintiff argues that subsequent complaints render all previous ones without any legal force and effect so any discrepancies in the subsequent complaints should be ignored. *See* Pl's. Reply. to Def's. Resp. to Pl's. Obj. [doc. # 158] at 3-4.

[4]Failure to exhaust is an affirmative defense that the defendant has the burden to plead and to prove. *Nerness v. Johnson*, 401 F3d 874, 876 (8th Cir. 2005) (*per curiam*).

1.The Clerk of Court alter the docket to reflect Defendant "C. Banister" is "Canera Banister."

2.Defendant Carl Lynn Johnson's Motion to Adopt (Doc. No. 127) and Defendants' Motion for Summary Judgment (Doc. No. 126) are GRANTED in all respects save their requests for a with prejudice dismissal of this action.

3.Plaintiff's claims against Carl Lynn Johnson, Doc Holladay, Sarah Speer, Randy Morgan, Canera Banister, Frank Onyeokeziri, and Bertha Lowe are DISMISSED without prejudice.

4.Defendants' Motion to Appoint Custodian, Motion for Summary Judgment (Doc. No. 121) and Motion for Extension of Time (Doc. No. 156) are DENIED as moot.

5.The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order would not be taken in good faith.

IT IS SO ORDERED this 21st day of April, 2016.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE